In the Matter of the Application of
## THOMAS DEWEY EASTON
For Admission to Practice Law
In the State of Oregon
*Applicant.*
(SC 28181)
692 P2d 592

Thomas Easton, Santa Cruz, California, argued the cause and filed briefs in propria persona.

Stephen L. Griffith, Portland, argued the cause for the Oregon State Bar. With him on the brief was Joyce A. Harpole, Portland.

PER CURIAM

## PER CURIAM

This matter is before the court upon the reapplication of Thomas D. Easton (applicant) to practice law. Applicant's original application was denied in 1980. *In the Matter of Thomas D. Easton,* 289 Or 99, 610 P2d 270 (1980).

ORS 9.220 is the governing statute. It provides:[1]

"An applicant for admission as attorney must apply to the Supreme Court and show that the applicant:

"* * * * *

"(2)(a) Is a person of good moral character.

"(b)   For purposes of this section * * * 'good moral character' means conduct not restricted to those acts that reflect moral turpitude, but rather extending to acts and conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness and respect for the rights of others and for the laws of the state and the nation. The conduct in question should be rationally connected to the applicant's fitness to practice law."

According to the statute, an applicant for admission to the Oregon State Bar has the burden of proving his good moral character. *In re Taylor,* 293 Or 285, 647 P2d 462 (1982) (applying ORS 9.220 as it existed before its amendment to its present form in Oregon Laws 1981, chapter 193, section 7). As stated in *In re Alpert,* 269 Or 508, 525 P2d 1042 (1974):

"[T]his court's primary responsibility is to the public to see that those who are admitted to practice are ethically cognizant and mature individuals who have the character to withstand the temptations which are placed before them as they handle other people's money and affairs. Under our decisions and statutes an applicant has the burden of convincing this court that he is a person of good moral character. ORS 9.220; *In re Bernard Jolles,* 235 Or 262, 271, 383 P2d 388 (1963). If we are not reasonably convinced that the applicant

---

[1] When applicant was denied admission in 1980, ORS 9.220 provided:

"An applicant for admission as attorney must apply to the Supreme Court and show that he or she:

"(1) * * * * *.

"(2) Is a person of good moral character, which may be proved by any evidence satisfactory to the court.

"(3) * * * * *."

can withstand such temptations we should not admit him. Doubt of consequence, of necessity, must be decided in favor of the public's protection. There lie our first duty and concern. Presently we have such doubt."

269 Or at 518, 525 P2d at 1046. *See In re Taylor, supra,* 293 Or at 296, 647 P2d at 467.

A trial board heard this matter. It concluded:

"1. The applicant is not reformed. The Applicant is unable to appreciate the moral and legal implications of his conduct.

"2. The conduct of the applicant is sufficient to cause a reasonable person to have substantial doubts about the Applicant's honesty[,] fairness, respect for the rights of others [and] for the laws of the state and nation as that conduct rationally relates to the practice of law.

"3. The Applicant does not possess the good moral character and general fitness required for admission to practice law in the State of Oregon.

"4. The Applicant is neither intellectually nor emotionally prepared to adjust his behavior to established legal, ethical and professional rules, or to advise clients so to do."

The Disciplinary Review Board thereafter reviewed the case. It also recommended that the application be denied.

■ In our previous decision we found that applicant lacked "good moral character as that term is related to the practice of law." 289 Or at 102, 610 P2d at 271. We stated:

"* * * [A]pplicant believes it morally correct to obey a higher personal ethic than to conform his behavior to the law and to orders of court. Applicant's belief directly undermines his ability to represent and advise clients, particularly in situations of stress and emotional conflict. Moreover, it is directly inconsistent with a lawyer's function as an officer of the court. * * *"

289 Or at 102, 610 P2d at 271. Once again, we reach the same conclusion, for much the same reasons.

We find these material facts. While a third-year student at the University of Oregon School of Law and in the throes of a marriage dissolution, the applicant, in a deliberate and premeditated manner, violated Oregon law and a court order awarding temporary custody of his then three and one-

half-year-old son to the mother by taking the son to California. In preparation for this act applicant had researched the law and consulted others in an effort to discover a jurisdiction in which he would be able to obtain a more favorable custody order. He was apprehended and convicted for custodial interference under ORS 163.257, a felony, and was held in contempt by the domestic relations court.

■     During the dissolution proceedings the applicant also deliberately lied under oath. In response to questions by the court regarding the disposition of certain marital property by applicant, applicant testified that he did not remember to whom he had given certain items of property. A short time later, applicant admitted to the court that he did in fact remember, but would not reveal, the names of those persons.[2]

On October 27, 1977, after having been found guilty of the crime of custodial interference in the first degree but prior to his sentencing for that crime, the applicant applied for certification to teach in Oregon public schools. In response to the question "Have you ever been convicted of an offense other than a minor traffic violation" the applicant answered "No."[3] Applicant testified that:

> "My attorney advised me at the time [that] until sentencing I wasn't guilty of a crime, because a misdemeanor isn't considered usually a crime. At the time I filed [the application] I thought I was perfectly within my rights to say no."

Applicant later testified that the answer to the question on the application was not true, but was the product of "a moral lapse."

On February 20, 1981, applicant filed a lawsuit in the

---

[2] Those findings were the reasons given for the earlier denial of admission. Applicant argues that neither the earlier violation of the custody order nor the false testimony given under oath is relevant to the present proceeding. On the contrary, his past conduct is relevant. He alleged that he has reformed. His reformation of character must be gauged in light of all material circumstances. Had applicant not applied for admission to the bar until now, we would certainly weigh his past conduct in our considerations. The fact that applicant previously was refused admission to the bar does not remove his past conduct from present consideration by this court.

[3] The applicant left blank a similar question on his 1980 Willamina School District employment application. He explained that this was not a lie but a refusal to answer. He testified that he did not answer the question because he thought the school district had no right to ask the question, that it was none of their business, and that at the time, a motion to set aside his conviction was pending.

Yamhill County Circuit Court for money damages against Willamina School District Board, the district superintendent and the Willamina High School principal, solely for the purpose of exerting pressure on the named parties to give him favorable recommendations regarding his job performance while employed by the Willamina School District. Applicant did not ask for such recommendations in his formal complaint. The complaint contained allegations that one or more defendants "intentionally, maliciously and wrongfully put plaintiff in grave fear and apprehension of imminent physical harm," wrongfully imprisoned him and intentionally inflicted emotional distress.

Applicant stated, "It was a suit intended as you might call a nuisance suit." He testified:

"Mr. Elliott: So the lawsuit alleged outrageous conduct?

"Mr. Easton: Yes.

"* * * * *

"Mr. Elliott: What was the purpose of filing that lawsuit?

"Mr. Easton: To get recommendations.

"Mr. Elliott: Did you ask for recommendations in the lawuit?

"Mr. Easton: No, no. I asked the superintendent on Thursday for recommendations and she refused. The next day, on Friday, I filed the lawsuit.

"Mr. Elliott: So you filed an outrageous conduct lawsuit in order to force the superintendent and the principal to give you some recommendations as far as your personal status was concerned?

"Mr. Easton: Yes. * * *

"Mr. Barker: Were you not interested in recovering damages in that lawsuit?

"Mr. Easton: I didn't expect to get any.

"Mr. Barnhisel: Did you ask for any?

"Mr. Easton: Oh, yes.

"Mr. Barnhisel: How much?

"Mr. Easton: A $100,000, a figure out of the air.

"Ms. Hammer: When you say it was intended as a nuisance suit, what do you mean by that?

"Mr. Easton: Well, as I understand the term in law, a nuisance suit is one filed where you don't have any reasonable expectation of getting damages.

"Mr. Elliott: Did you feel that was a proper course of action, filing that lawsuit under those circumstances?

"Mr. Easton: I didn't know what else I could do. How else could I put pressure upon them?

"Ms. Hammer: As a potential attorney, what do you think of the ethics of filing a case for a reason such as you have described?

"Mr. Easton: Well, I'm very honest with you, aren't I, in explaining the subjective motivations. I wouldn't file such a suit if I thought it was truly a nuisance suit in the sense that it had no chance, * * *

"* * * * *

"Mr. Easton: Okay. I'm sure you are aware, if you look at the suits that do come before the courts that do get into trial, some of them could be categorized as nuisance suits in the sense that they are a waste of judicial time. So some attorney filed that, and the definition of what's frivolous, you have to go a long ways to find something that's been dismissed for frivolity. As a practical matter, I think thats very, very bad, but as in my case, I didn't know what else to do. I was under a lot of pressure there. * * *"

Applicant also filed a federal court action against the Willamina School District and others. The complaint contained lengthy and detailed allegations of fact concerning his problems in the school district and alleged, among other things, that his dismissal violated his "rights to due process of law under the Fifth and Fourteenth Amendments" and under a collective bargaining agreement, and that his dismissal violated his right to freedom of speech under a collective bargaining agreement and the First and Fourteenth Amendments.

He received $20,000 in settlement of that case before the hearings in this case occurred. Copies of the settlement documents are not in the record, and the transcript contains little else concerning the reasons for the $20,000 payment.

At his 1983 hearing before the Trial Board, applicant testified that he had not yet paid the court costs assessed

against him in his earlier unsuccessful application attempt. Applicant has made no attempt to settle his account.

Under the dissolution decree, applicant's monthly child support obligation increases as his earnings increase. We are convinced that he has deliberately kept his income at a low level in order to avoid a child support obligation exceeding $25 per month. Applicant testified, "Were I able to get custody of my son, I would work whatever was necessary to support him."

The record also shows a pattern of devious or untruthful testimony under oath. On several occasions applicant answered questions to which he knew the answers but did not care to answer by saying, "I don't know" or "I don't remember."[4]

Applicant's testimony reveals a deep-seated propensity to provide half-truthful responses when truthful responses would be disadvantageous. Concerning his answer to a question on an application for a teaching certificate, he testified:

"MR. EASTON: I would certainly look at it as half truth, and in court when a lawyer misrepresents to the court a client's position and these kinds of things, — this is what I

---

[4] In a deposition in a federal court case, applicant testified:

"Question: I will draw your attention to question No. 5 on the employment application made in Willamina.

"Answer: Yes.

"Question: Can you indicate what question No. 5 refers to?

"Answer: It says, 'Have you ever been convicted of a crime.'

"Question: Did you respond to that answer?

"Answer: Apparently not.

"Question: Why is it that you left that portion of the application blank?

"Answer: I can't say. It's been two years since I have seen it, but it can be answered no if you like right now.

"Question: Well, I'm interested in knowing why at the time you made application to Willamina you left that portion of the application blank.

"Answer: I have answered that question already.

"Question: Your answer wasn't clear to me, so I'm going to ask you the question again.

"Answer: I don't know."

was taught to do, a half truth, we can tell to avoid telling the full, whole truth because that hurts our clients. I certainly was a law graduate and certainly thinking, I suppose, can I evade just to get the job which I couldn't get without credentials. On the other hand perhaps I would have gotten the credentials with a fully honest, truthful answer."

We agree with this characterization of applicant by one witness:

"* * * [W]hen he has a goal in mind he will neglect to inform people of certain facts * * *. And I felt that he is somewhat manipulative on what is expedient."

We are convinced that at the time of the hearing the applicant had the same defects in moral character which led us to deny his earlier application. He plays fast and loose with the truth. Where his perception of what is right conflicts with the requirements of law he is disposed to disobey the law and follow his precepts. He puts his interests above the law.

Applicant's conduct and attitudes concerning repayment of his just debts and his attitude toward his child support obligation support our conclusion. Applicant failed to "scrupulously honor all financial obligations," *In re Taylor, supra,* 293 Or at 296, 647 P2d at 467.

Applicants for admission to practice law are required to take an oath that "in the practice of law the applicant will support the Constitution and laws of the United States and of this state, and be of faithful and honest demeanor in office." ORS 9.250.[5] We are not convinced of applicant's ability to discharge the obligations imposed upon lawyers. Lawyers are regularly required to face unhelpful facts and compelled to do things that may be disadvantageous, unpleasant or disagreeable. For example, in the process of discovery, lawyers often are required to reveal facts which are extremely injurious to a client or a client's cause.

Applicant is neither intellectually nor emotionally

---

[5] Illustrative of applicant's view of the role of an attorney is his response to a member of the Board of Bar Examiners regarding the duty of attorneys to tell the truth:

"MR. BARKER: 'You also take an oath when you're sworn into the Bar.'

"MR. EASTON: 'But nobody pays attention to that.' "

prepared to adjust his behavior to established legal or ethical rules, or to advise clients so to do. The evidence shows a deep-seated propensity to adhere only to those rules that are expedient for, or personally acceptable to, him.

Applicant holds a consistently low and cynical opinion of lawyers and lawyers' conduct. He therefore believes that his conduct need only meet his perception of the actual practice. Whether or not his perception is correct, we are required to, and do, judge both lawyers and applicants by the standards of conduct required by law.

As stated above, this court's primary responsibility is to the public. Our charge is to assure that those who are admitted to the bar possess the sense of ethical responsibility and the maturity of character to withstand the many pressures and temptations which will confront them in the practice of law. We are convinced that applicant is not so qualified.

Application denied.