Submitted on the briefs and record June 27, 1997, applicant is admitted
conditionally to the practice of law April 9, 1998

## In the Matter of the Application of

### PATRICK JOHN SCALLON,
For the Admission to the
Practice of Law in Oregon.
*Applicant.*

(SC S43201)

956 P2d 982

Patrick John Scallon, *pro se*, filed the petition.

Jeffrey D. Sapiro, Oregon State Bar Regulatory Counsel, Lake Oswego, filed the response for the Board of Bar Examiners.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.*

PER CURIAM

---

* Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision.

## PER CURIAM

This is a contested admission proceeding in which the Board of Bar Examiners (the BBX) finds itself in the unusual position of being unable to make a majority recommendation with respect to an application for admission to the Oregon State Bar (the Bar). The BBX consists of fourteen members. Seven members (the favoring half) believe that applicant Patrick John Scallon (applicant) should be admitted to practice in Oregon, albeit with conditions. Seven members of the BBX (the opposing half) believe that admission should be denied. Each half has offered articulate and cogent reasons for its respective views. The matter is now before this court for decision. After a *de novo* review of the record made before the BBX,[1] we admit applicant conditionally.

This case has had a relatively long history. Applicant is 46 years of age, single, and a resident of Hood River, Oregon. He is a member of the Wisconsin Bar. He passed the February 1995 Oregon Bar examination. In the course of the evaluation of applicant's qualifications for admission, questions arose within the BBX concerning applicant's good moral character and fitness to practice law. The BBX conducted an investigation and, following that investigation, recommended to this court by majority vote that applicant be admitted to the practice of law. Two members of the BBX filed a minority report recommending further investigation. On May 7, 1996, this court remanded the matter to the BBX for a character review proceeding pursuant to Rule 9.60(7) of the Rules for Admission of Attorneys (RFA).[2]

A character review proceeding was held on January 2, 1997, before a three-member panel of the BBX. That panel

---

[1] Pursuant to Rule 9.60(5), Rules for Admission of Attorneys (RFA), this court reviews the record made before the BBX *de novo*.

[2] RFA 9.60(7) provides:

"If the Oregon Supreme Court is unwilling to accept a Board of Bar Examiners recommendation to admit an applicant to practice, and if the Board of Bar Examiners recommendation to admit was made without a character review proceeding having been held, then the Oregon Supreme Court shall remand the matter back to the Board for a character review proceeding to be commenced. The Supreme Court may limit or direct the scope of the character review proceeding on remand."

unanimously recommended that applicant be denied admission to the practice of law. Thereafter, pursuant to RFA 9.55, the matter was reviewed by the full BBX. As noted, the opposing half voted to adopt the opinion and recommendation of the panel and to deny admission. The favoring half voted to recommend to this court that applicant be admitted conditionally.

A recommendation for admission to practice law requires an affirmative vote of a majority of the nonrecused members of the BBX. RFA 9.55(4). Lacking that support, applicant has moved this court to adopt the recommendation of conditional admission that was made by the favoring half.[3]

The underlying facts are somewhat convoluted. Applicant graduated from law school in 1979. He was married during the time that he attended law school. While in law school, he incurred a number of student loans. After law school, applicant entered into private practice with a firm in Sturgeon Bay, Wisconsin. Within a year, applicant's marriage foundered and his wife moved to Milwaukee, Wisconsin. Although it cost him his job, applicant followed his wife to Milwaukee in a futile attempt to reconcile.

With his first marriage at an end and without a job, applicant took on work as a contract lawyer for the public defender's office in Milwaukee. In time, that work led to applicant's being hired to a full-time staff position in which applicant continued until 1990.

By his own admission, applicant never had been a sensible money manager. He did not pay his bills on time. When his obligations on his various student loans became due, applicant did not pay them consistently or completely. Although he was earning a good salary at the public defender's office, applicant's debts continued to mount. Applicant unsuccessfully attempted to negotiate a payoff schedule for the loans. He was sued for some of the outstanding balances and threatened with actions on others. After consulting

---

[3] After the matter was taken under advisement, applicant moved for permission to present additional evidence. That motion was denied, but applicant and the Bar were asked to confer to see if a mutually agreeable stipulation could be entered into with respect to the evidence in question. As indicated by our recitation of the facts, *post*, the parties did stipulate to supplement the record.

with other lawyers about the propriety of doing so, applicant filed for bankruptcy. The only significant debt to be discharged by the bankruptcy was the $27,547.85 in student loans.

After the bankruptcy, applicant was able, with the help of his second wife, to manage his finances in a way that enabled the couple to purchase a home. Applicant timely made his mortgage payments and even made advance payments. He was similarly able to handle a car purchase. However, in 1989 applicant's personal and financial life went into a tailspin. His second marriage dissolved under particularly difficult circumstances. He nearly was killed in a windsurfing accident on Lake Michigan. The resulting damage to his physical health, coupled with depression over his marriage, caused applicant to see a psychiatrist as often as two or three times a week.

In an effort to find the time to address his personal problems and to ensure that he did not harm his clients, applicant left his public defender job and went into private practice, where he was able to limit the amount of work that he undertook. During his first year in private practice, applicant was able, in spite of a limited income, to meet his financial obligations, including his tax obligations.

In 1991, applicant earned about $16,000 from his practice. In addition, he cashed in an individual retirement account (IRA) valued at over $24,000. Although he realized that his early termination of the IRA would engender a significant tax penalty, applicant made no provision for paying his taxes for that year. When the taxes became due, applicant could not pay them.

Applicant used a large part of the IRA proceeds to buy a truck, which he then drove to Mexico. He stayed there about four months. Beyond the turmoil that he was experiencing in his personal life, applicant offered no excuse for his failure to plan ahead for his tax obligations: "It was a mistake. It was a very poor judgment on my part. I was aware of my obligations and I didn't do it." Although he filed a tax return that acknowledged that taxes were owed, applicant also failed to pay his Wisconsin state taxes in 1991.

Applicant paid his taxes in 1992 and 1993. However, he acknowledges that a small additional assessment on his federal taxes for 1993 had not been paid as of the time of the hearing.

Applicant earned approximately $18,800 in Wisconsin in 1994. During that year, he left Wisconsin and relocated to Hood River, Oregon. Applicant apparently filed federal and state income tax returns for 1994, but still owed the amounts listed on those returns at the time of the hearing.

The Internal Revenue Service (IRS) contacted applicant in 1993 concerning his 1991 tax bill. Applicant agreed to make installment payments to the IRS to retire that tax debt. At the time of the agreement, he owed over $9,900. The agreement called for applicant to make payments of $300 per month until all taxes, penalties, and interest were paid in full. Applicant made regular monthly installment payments pursuant to that agreement until he moved to Oregon in 1994. After moving to Oregon, applicant stopped making the installment payments. He entered into a similar agreement with the State of Wisconsin to pay delinquent 1991 state income taxes. He agreed to pay $200 per month until that amount was paid in full. He made only one payment under that agreement.

Applicant applied for admission to the Oregon State Bar in December 1994. In August 1995, the IRS filed a notice of federal tax lien in excess of $10,200 against applicant in Hood River County for the years 1991, 1993, and 1994. Also in August 1995, the State of Wisconsin sent applicant a notice of delinquency for his 1994 state income taxes.

Applicant has worked in Oregon as a self-employed sheet metal worker, a laborer for a construction firm, and a residential remodeler. His work has taken him to job sites throughout the northwest. In 1995, applicant earned approximately $4,500. At the time of the hearing before the BBX panel, applicant had been making $150 per month payments on his back tax obligations to the State of Wisconsin. He was not making payments on his federal tax obligation.

At the time of the hearing, applicant was hoping to be able to meet all or most of his outstanding tax obligations

when he received his share of a fee for a personal injury case that was being handled by another lawyer in Wisconsin. A stipulation between applicant and the Bar that was submitted to this court after the BBX pluralities rendered their opinions establishes that applicant now has received the anticipated payment and has satisfied all his delinquent tax obligations.

We pause after recitation of the foregoing facts to note the standard to which applicant is being held in this proceeding. The right to practice law in this state is limited to those who demonstrate that they have the requisite good moral character and fitness to do so. This court has summarized the pertinent inquiry as follows:

> "An applicant for admission to the Bar must show that he or she is a person of good moral character. ORS 9.220(2)(a).[4] An applicant must prove that he has the requisite character by clear and convincing evidence. *In re Rowell*, 305 Or 584, 588, 754 P2d 905 (1988). That means that an applicant must show that it is 'highly probable' that he has good moral character. *In re Monaco*, 317 Or 366, 370 n 4, 856 P2d 311 (1993). Any significant doubts about an applicant's character should be resolved in favor of protecting the public by denying admission to applicant. *In re Easton*, 298 Or 365, 367-68, 692 P2d 592 (1984) (citing *In re Alpert*, 269 Or 508, 518, 525 P2d 1042 (1974)), *cert den* 472 US 1012 (1985)."

*In re Jaffee*, 319 Or 172, 176-77, 874 P2d 1299 (1994) (footnote omitted).

After reciting the facts (other than those supplied by the supplemental stipulation) and recognizing the applicable legal standard, the opposing half took up the two related considerations that formed the basis of their recommendation.

---

[4] ORS 9.220(2)(a) requires an applicant to show that he or she "is a person of good moral character and fit to practice law." Subsection (2)(b) of the same statutory section provides:

"[L]ack of 'good moral character' may be established by reference to acts or conduct that reflect moral turpitude or to acts or conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness and respect for the rights of others and for the laws of the state and the nation. The conduct or acts in question should be rationally connected to the applicant's fitness to practice law."

Those considerations were applicant's bankruptcy and his failure to keep up his tax payments. We follow a like format.

*Applicant's bankruptcy*

■ An applicant's handling of his or her financial affairs is an appropriate consideration in determining the applicant's fitness to practice law. *See, e.g., In re Taylor*, 293 Or 285, 293, 647 P2d 462 (1982) (so stating). Applicants and lawyers are expected to honor scrupulously all financial obligations. *Id.* at 295. From the foregoing principles, the opposing half concluded that the circumstances surrounding applicant's filing for bankruptcy showed that he lacked the requisite character to practice law.

The bankruptcy proceeding discharged applicant's outstanding student loans. The opposing half reasoned that applicant's failure to work out ways to pay off his outstanding student loans, when he was making an adequate income, was unreasonable. It followed, they concluded, that applicant was not justified in seeking relief from those debts through bankruptcy.

There is no question that applicant's handling of his personal financial affairs at that time was inadequate. Neither is there any reason to doubt that, had applicant been a more responsible money manager, he would have been able to pay off his student loans in due course. But when applicant could not manage his affairs successfully, and when his failure led to several legal actions being filed or threatened against him, he was as entitled as any other debtor to seek protection from his creditors in bankruptcy. The opposing half does not suggest that applicant was ineligible for bankruptcy under pertinent law or that he did anything improper in connection with those proceedings. We decline to hold that a bankruptcy in the history of an applicant for admission to the Bar *per se* is disqualifying, even if it appears that the financial difficulties that led to the bankruptcy were the fault of the applicant.

In taking a contrary view, the opposing half relies on a number of cases—all, with the exception of *In re Taylor*, above—from other jurisdictions. Those cases do not support the opposing half's position. The applicant in *Taylor* was not

denied admission on the basis of bankruptcy alone; he was guilty of other disqualifying misconduct. The other cases are less in point than *Taylor* and do not merit discussion here. We are not persuaded that applicant should be denied admission to the Bar on this ground.

### Applicant's taxes

■     The opposing half finds the circumstances surrounding applicant's failure to pay his taxes, especially after cashing in his IRA, to demonstrate a lack of good moral character and fitness to practice law. The opposing half acknowledges that applicant's life was in chaos during the period in which he failed to meet his tax obligations, but then sums up as follows:

> "The panel finds that there was no natural catastrophe, medical emergency, or any other unexpected event justifying this failure. Applicant decided to leave his practice, move to Oregon, and windsurf. Such a move may have been, in the long run, good for Applicant's mental, physical, and spiritual health, but it does not explain why he did not pay his taxes.
>
> "* * * * *
>
> "Applicant states that he is aware of these obligations and intends to pay them. Applicant claims that the nature of his work is sporadic and that he earns so little money that he does not have enough money to live and still have something left to pay his tax debts. The panel is not convinced. * * *
>
> "Applicant continues to live in Hood River working as a residential remodeler earning about $1,000 a month. If Applicant were serious about retiring his debts and scrupulously honoring his financial obligations, he could move to a metropolitan area, such as Portland, where he could reasonably be expected to earn more money. Applicant could also return to Wisconsin where he remains a licensed attorney. * * *
>
> "The panel is left with the impression that Applicant continues to live in Hood River because he can windsurf. There is nothing wrong with windsurfing. But choosing to live a lifestyle which allows one to windsurf, while ignoring

one's financial obligations, does not comport with the high ethical standards required of an attorney of this state."

We disagree with the opposing half. Applicant always has filed income tax returns and acknowledged the taxes that he owed. For the most part, he has paid them. He himself has acknowledged that, when he failed to pay his taxes, his failures were his own doing and responsibility. Applicant has made at least small inroads on his tax obligations during even financially limiting circumstances and has held out the hope that he could satisfy all the obligations in full when he received his share of the attorney fee for the case in which he had been involved in Wisconsin. As we have noted, supplemental information shows that he has fulfilled that hope.

We think that the following statement—also by the opposing half—better sums up this case and the factors that we find most pertinent:

> "This is a close case and a difficult decision. Several practitioners and judges have attested to Applicant's good moral character, and have lauded Applicant's skill and integrity in the practice of law. There is no evidence that Applicant has committed fraud, deceit, or any crimes of moral turpitude. There is no evidence that Applicant has ever cheated a client nor that Applicant's handling of his financial affairs has ever left a client shortchanged."

We agree with that description of the record. We understand it to mean that the opposing half accepts as a general proposition that applicant is a person of good moral character, subject only to a lingering doubt as to whether he was wholly committed to satisfying his tax obligation. As noted, applicant's actions now have laid that issue to rest. The opposing half's surviving concern consists of doubts that applicant has demonstrated his fitness to practice law.

For our part, we are satisfied on that score, as well. Applicant appears always to have had his clients' best interests in mind, so much so that he stopped practicing law at a time when he no longer felt fit to represent those clients adequately. No issues have been raised concerning his competence. That demonstrates to us that applicant has had, and

continues to have, the fitness to appreciate and to engage in the practice of law.

It also appears to us that applicant understands and appreciates the reasons that led to his past financial difficulties, is determined to avoid their repetition, and is capable of carrying out that determination. In that regard, applicant is willing to accept the recommendation of the favoring half that he be admitted conditionally.[5] The conditions that are recommended by the favoring half are appended to their "Recommendation of Conditional Admission." Although some of those conditions have been met during the hiatus between the hearing and this decision, the balance of them appear to be well considered. We adopt those latter conditions, with the alteration of the expiration date of one of them (to allow for the passage of time). Those conditions are:

1. The term of conditional admission may be extended upon a showing of good cause set forth in a petition to the Oregon Supreme Court filed by Oregon State Bar Disciplinary Counsel.

2. In the event that applicant enters into a solo law practice during the term of conditional admission, applicant agrees to use the loss-prevention services of the Professional Liability Fund for help in setting up a law practice, including instruction in lawyer trust accounts and trust accounting practices.

3. In the event that applicant complies with all conditions established by this agreement, the term of his conditional admission shall expire on January 1, 2001, and he shall be admitted to practice law unconditionally thereafter without further order of the Oregon Supreme Court.

With the foregoing conditions in place and monitored, we are satisfied that applicant possesses the necessary good moral character and fitness to be admitted to the practice of law in Oregon. When applicant executes an appropriate document committing himself to the conditions that we have identified and providing that the conditions will remain

---

[5] Conditional admission is authorized by RFA 6.15(2) and (3).

in place until January 1, 2001, he should be admitted to the practice of law.

Applicant is admitted conditionally to the practice of law.