Submitted on the record and briefs April 24, admission denied July 24, 1998

In the Matter of the Application of
DANIEL ALAN BERNATH,
For Admission to the Oregon State Bar.
(SC S44863)

962 P2d 685

Daniel A. Bernath filed petitioner's briefs *pro se*.

Jeffrey D. Sapiro, Oregon State Bar, Lake Oswego, filed the brief on behalf of the Oregon State Board of Bar Examiners.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Kulongoski, and Leeson, Justices.

PER CURIAM

## PER CURIAM

The issue in this case is whether Daniel A. Bernath (applicant) has proved by clear and convincing evidence that he "is a person of good moral character and fit to practice law" in this state. ORS 9.220(2)(a).[1] After *de novo* review of the record developed before the Board of Bar Examiners (Board), ORS 9.536(3) and 9.539, Rules for Admission of Attorneys (RFA) 9.60(5), and Bar Rule of Procedure (BR) 10.6, we conclude that applicant has not proved that he possesses the requisite good moral character and fitness to practice law in this state. Accordingly, we deny applicant admission to the practice of law in the State of Oregon.

Applicant was admitted to the practice of law in California in 1984 and practiced in that state until 1994, at which time he moved to Oregon. In October 1994, applicant applied for admission to the Oregon State Bar. Applicant took and passed the February 1995 Oregon State Bar examination. However, following a character and fitness review proceeding, a three-member panel of the Board recommended that applicant be denied admission to the practice of law in Oregon. Thereafter, the full Board unanimously made the same recommendation to this court, forwarding that recommendation to the court on December 24, 1997. Applicant timely filed a petition for review of the Board's recommendation. This court has jurisdiction pursuant to ORS 9.539 and BR 10.2.

Applicant must prove by clear and convincing evidence that he has the requisite good moral character to be admitted to the practice of law in Oregon. RFA 9.45(6); *In re Rowell*, 305 Or 584, 588, 754 P2d 905 (1988). That means that applicant must show that it is "highly probable" that he has good moral character. *In re Monaco*, 317 Or 366, 370 n 4, 856 P2d 311 (1993). Any significant doubts about applicant's character are resolved in favor of protecting the public by

---

[1] ORS 9.220 provides, in part:

"An applicant for admission as attorney must apply to the Supreme Court and show that the applicant:

"\* \* \* \* \*

"(2)(a)  Is a person of good moral character and fit to practice law."

denying him admission. *In re Jaffee*, 319 Or 172, 177, 874 P2d 1299 (1994); *In re Easton*, 298 Or 365, 367-68, 692 P2d 592 (1984).

In its recommendation to this court, the Board identified the following allegations:

"(A)   He disobeyed a court order to pay child support.

"(B)   He was suspended for over a year in the State of California for failure to pay child support.

"(C)   He failed to inform the Board that he was suspended from the practice of law in the State of California and he lied to the Board about his suspension in California, stating that he was not suspended when he was in fact suspended.

"(D)   He loaned money to a client, Tamara Varner ('Varner'), and collected on the loan from settlement proceeds from Varner's lawsuit without Varner's knowledge or agreement.

"(E)   He signed Varner's name to a release without Varner's knowledge and without advising the opposing party or counsel for the opposing party that he was signing the release on behalf of Varner. On that same release he signed as a witness, attesting to the authenticity of Varner's signature.

"(F)   He lied by omission to the Board when he told it that he did not notarize the Varner settlement document.

"(G)   He endorsed Varner's name to the settlement check without Varner's knowledge and without advising the bank that he was doing so.

"(H)   He retained all of the proceeds of the settlement without Varner's knowledge or agreement.

"(I)   He failed to respond to a notice from the Committee on Arbitration of the Los Angeles County Bar Association that Varner was disputing his fee and that there would be an arbitration of the dispute. He also failed to appear at the hearing.

"(J)   He failed to advise the Board of the fee dispute or the award in favor of Varner and against him in the amount of $10,000.

"(K)   He wrote a letter to Varner after entry of the award against him wherein he misrepresented the law and threatened to sue her if she did not agree to settle with him for $500.

"(L)   He destroyed all of his files for all of the cases he handled in California.

"(M)   A judgment was entered in California against him in the amount of $34,000 for malicious prosecution.

"(N)   He lied by omission to the Board when in his application for admission he stated that the judgment for malicious prosecution was reversed, but did not state that it was reversed by stipulation of the parties rather than on the merits.

"(O)   He failed to inform the Board about a lawsuit to which he was a party and which settled in applicant's favor for the amount of approximately $41,000.00.

"(P)   On May 16, 1997, he issued subpoenas on which he holds himself out to be an attorney practicing in Oregon.

"(Q)   Applicant failed to inform the Board about a lawsuit in which applicant was a plaintiff in an attorney fee dispute.

"(R)   Applicant failed to inform the Board that a motion for sanctions was made against him for appearing at a deposition while carrying a concealed weapon and that a sanction was assessed against him in the amount of $750."

We need not address each of those specific allegations. As we explain below, we find that applicant failed to disclose to the Board his suspension by the California State Bar, and he made false representations to the Board regarding the Varner settlement agreement. Each of these acts, standing alone, would be a sufficient ground for denying his application to practice law in Oregon. Any further discussion of the remaining allegations against applicant would not benefit bench or bar.

We first discuss applicant's failure to disclose his suspension by the California State Bar. The status of an applicant's bar membership in another jurisdiction is material information required by the Board in making an evaluation of that applicant's character and fitness to practice law

in Oregon. That information, along with a certificate of good standing, is required in the original application for admission to practice law. RFA 4.15(3).

Applicant was an active member of the California State Bar when he filed his application to practice law in Oregon. At some point after making his application, applicant voluntarily transferred to inactive status in California. On July 31, 1995, after that voluntary transfer to inactive status, applicant was suspended by the California State Bar for failing to pay child support. Applicant failed to disclose his suspension to the Board; the Board discovered it during its investigation of applicant's character and fitness. Applicant repeatedly denied that his California Bar status had changed until the Board produced documents demonstrating that the California State Bar had suspended him for failure to obey a court order to pay child support.

■     It is essential that every applicant to practice law in Oregon fully disclose to the Board all information relevant to the applicant's character and fitness. Failure to disclose relevant information fully and candidly is a ground for the Board to recommend denial of admission. RFA 6.05(3). It also forms a basis for this court to deny admission. *In re Parker*, 314 Or 143, 154-55, 838 P2d 54 (1992). Applicant was on notice of his obligation to disclose relevant information to the Board, both through the Rules for Admission of Attorneys and through the application itself, on which applicant acknowledged, by signature and under oath, his duty to disclose. Applicant's disclosure fell short of the degree of disclosure that he acknowledged to be required of him. Because it raises significant doubts about his good moral character, applicant's failure to disclose his suspension by the California State Bar constitutes a sufficient ground for denial of his application to practice law in Oregon. *In re Monaco*, 317 Or at 369-71; *In re Parker*, 314 Or at 154-55.

■     We turn to applicant's representation of Tamara Varner. Applicant represented Varner in a variety of legal matters while he was an active member of the California State Bar. The last matter in which he represented her was a personal injury auto accident case in which Varner was the plaintiff.

The attorney-client relationship between applicant and Varner was governed by a written fee agreement. Applicant destroyed the Varner fee agreement before he moved to Oregon. During the Board's character and fitness investigation, applicant produced a blank, computer-generated agreement that he claimed was identical to the agreement that Varner signed. That blank agreement included a power of attorney provision. Varner disputes applicant's assertion that the agreement that she signed contained a power of attorney provision. Varner further asserts that, if the agreement that she signed did include a power of attorney provision, applicant explained neither the meaning nor the effect of that provision to her.

The defendant's insurance carrier in Varner's auto accident case agreed to a settlement in the amount of $10,000. A release agreement was part of that settlement. The terms of that release agreement required Varner to acknowledge that she had "completely read" and "fully understood" it. By its terms, the release agreement also expressly stated that the release was essential and material to the settlement and that the settlement would not have been entered into by the defendant's insurance carrier without the release. Claiming that he acted on the authority of the power of attorney provision that he asserts was in the Varner fee agreement, applicant acknowledged that he signed Varner's name on the release agreement. Applicant also endorsed Varner's name on the settlement check. Applicant made no disclosure or indication, either on the release documents or orally, that he was signing the release on Varner's behalf. In addition, applicant signed his own name on the release attesting that he witnessed Varner sign that document.[2]

---

[2] The record also reveals that applicant repeatedly attempted to mislead the Board regarding the Varner settlement release agreement. He failed to produce the release agreement, despite repeated inquiries about it by the Board and his knowledge that the Board deemed the agreement to be critical to the evaluation of his character and fitness. At one point, he denied that there was a release agreement. He later suggested that he already had provided the release agreement to the Board when, in fact, he had not done so. He stated unequivocally that he had not notarized the release, without disclosing that he had attested to witnessing Varner's signature on the release, an act functionally equivalent to notarization.

By signing the release agreement and the settlement check, applicant falsely represented to the defendant, the defendant's counsel, the defendant's insurance carrier, and the bank that negotiated the settlement check that Varner personally approved the settlement, endorsed the check, and released the defendant from all claims. Applicant's willingness to make such false representations demonstrates a lack of good moral character. *See, e.g., In re Magar*, 312 Or 139, 141, 817 P2d 289 (1991) (lawyer's unauthorized endorsement of client's name on draft made out to client constituted behavior involving dishonesty, deceit, or misrepresentation); *see also In re Boothe*, 303 Or 643, 651-52, 740 P2d 785 (1987) (lawyer's endorsement of client's name, without authorization, on a check on which lawyer and client were joint payees, constituted conduct involving dishonesty, deceit, or misrepresentation); *In re Sassor*, 299 Or 570, 576, 704 P2d 506 (1985) (lawyer's endorsement, without authorization, of payee's signature on a state property tax refund check and deposit of those funds in lawyer's trust account constituted conduct involving dishonesty, deceit, or misrepresentation). Applicant's testimony before the Board provided no convincing explanations for his misrepresentations in the course of the Varner litigation, and does nothing to resolve our significant doubts regarding applicant's moral character. Those doubts constitute sufficient grounds for denial of his application to practice law in Oregon. *In re Monaco*, 317 Or at 369-71; *In re Parker*, 314 Or at 154-55. *See also In re Cheek*, 246 Or 433, 425 P2d 763 (1967) (applicant who signed name of company president to two checks and lied about damages to a company automobile denied admission).

In a bar admission proceeding, this court's primary responsibility is to the public. Our charge is to assure that those who are admitted to the bar possess the ethical responsibility and the maturity of character necessary to enable them to withstand the many pressures and temptations that will confront them in the practice of law. The record contains overwhelming evidence that applicant does not possess that requisite good moral character and fitness to be a practicing lawyer in Oregon. Applicant's brief to this court does little to resolve the doubts raised by the Board about his character. We conclude that applicant has failed to prove by clear and

convincing evidence that he is a person of good moral character and fit to practice law in Oregon.

Admission denied.