Filed:  September 22, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

In the Matter of the Application for
Admission to Practice Law:

JUSTIN ROBERT STEFFEN,

Applicant.

(SC S059555)

En Banc

On review from a recommendation of the Board of Bar Examiners.

Submitted on the record June 27, 2011.

No appearance for the Oregon State Bar.

No appearance *contra.*

PER CURIAM

Application denied.

PER CURIAM

Justin Robert Steffen (applicant) seeks admission to the Oregon State Bar. Applicant submitted his admission application to the Board of Bar Examiners (board) in November 2010. On his application, he indicated that he had past-due debts and judgments. The board asked applicant for additional information about those debts and judgments. Applicant did not respond to that request for about three months, at which point applicant advised the board that he had filed for bankruptcy. Applicant took the position that the board could not inquire about his past-due financial obligations, because to do so would violate federal law.[1] The board made further efforts to investigate the circumstances of applicant's debts and financial obligations, and applicant continued not to cooperate fully. The board now recommends that this court deny applicant's request for admission to the Oregon bar based on applicant's failure to cooperate with its investigation. As we will explain, we agree with the board's recommendation and deny applicant's admission.

Under ORS 9.210, the board is authorized to examine applicants for admission to the bar and recommend that this court admit those who are qualified under the law and the court's rules. *See also* Rules of Admission (RFA) 2.10(4) (board shall recommend to Supreme Court whether applicants should be admitted). One such

---

[1] Applicant relied on 11 USC section 525(a), a federal statute that prohibits a licensing body from denying a license to a person solely because the person has filed for bankruptcy or failed to pay an obligation that was discharged in bankruptcy.

1

qualification is that the applicant be "a person of good moral character and fit to practice law." ORS 9.220(2). This court has charged the board with investigating and evaluating an applicant's character and fitness. *See* RFA 2.10(2) (board shall investigate and evaluate moral character and fitness to practice law of each applicant); RFA 6.05 (board has authority to conduct investigations, convene evidentiary hearings, and issue subpoenas). Concomitantly, this court has charged applicants with a duty to cooperate and comply with the board's investigation and requests for information. *See* RFA 4.25(1) (specifying duty). To enforce that duty, our rules specifically provide that an applicant may be denied admission for failing to cooperate or refusing to provide the board with information material to the board's inquiry regarding the applicant's character and fitness to practice law. RFA 6.05(4).

Applicants for bar admission, like all lawyers, are expected to scrupulously honor their financial obligations. *In re Scallon*, 327 Or 32, 39, 956 P2d 982 (1998). In addition, because lawyers frequently hold client funds in trust, an applicant's problems handling money (either the applicant's own or funds belonging to others) raises concern about the applicant's ability to handle client funds with "scrupulous probity." *Cf. In re Stodd*, 279 Or 565, 567, 568 P2d 665 (1977) ("Nothing less than the most scrupulous probity in dealing with the funds of others is compatible with admission to the practice of law."). An applicant's handling of his or her financial affairs, therefore, is appropriate for the board and this court to consider in determining the applicant's fitness to practice law. *Scallon*, 327 Or at 39; *see also In re Taylor*, 293 Or 285, 293-94, 647 P2d 462 (1982) (so stating). The fact that an applicant has a bankruptcy in his or her history is not in and of

2

itself disqualifying. *Scallon*, 327 Or at 39. The circumstances of the bankruptcy, however, are highly relevant to consider. *See Taylor*, 293 Or at 293 (considering circumstances surrounding bankruptcy "as these circumstances illustrate an applicant's judgment in handling serious financial obligations"). A bankruptcy that results from extraordinary hardship generally will not reflect adversely on an applicant's character and fitness, while one arising from selfishness, a disregard of fiscal and moral responsibilities, or other irresponsible conduct generally will. *See In re Gunter*, 344 Or 368, 385-87, 182 P3d 187, *modified on recons*, 344 Or 540 (2008) (so observing generally; concluding that, in particular case before the court, bankruptcy reflected adversely on applicant's fitness where circumstances suggested it was not a remedy of last resort for unforeseen expenses, but rather was a convenient means of escaping inability to manage finances). For those reasons, in this case, applicant's handling of his debts and unpaid judgments was well within the scope of the board's investigatory mandate, and applicant had a duty to cooperate with the board's requests.

In its letter recommending that this court deny applicant's admission to the bar, the board relied on the above principles and several of the same cases we have cited. On review, applicant expresses his disagreement with the board's recommendation, but does not provide us with any argument that engages the board's reasoning to explain why the board's recommendation is wrong or inconsistent with our prior cases. Instead, applicant has waived filing a brief and rests on his various earlier communications with the board in which he protested the board's requests for information. Ultimately, applicant does not dispute that he has not cooperated fully with the board's investigation.

3

He disputes only whether the board is entitled to ask him about the circumstances of his past-due financial obligations, raising an argument based on the federal bankruptcy statute that we have previously rejected. *Gunter*, 344 Or at 385 (bankruptcy statutes do not prevent court from examining circumstances surrounding the bankruptcy). Beyond that, the only argument in applicant's earlier communications to the board that is potentially responsive to the principles outlined above is appellant's assertion that an applicant's mishandling of finances leading to bankruptcy, even when the circumstances have weighed adversely to admission, has not been the sole reason for denying an applicant's admission in our past cases.

That misses the point, however. The fact that none of our reported cases has been one in which financial irresponsibility was the sole reason to deny admission is simply a fact-specific observation about our resolution of those particular cases. There is no legal reason why the circumstances of an applicant's past financial dealings could not be a sufficient basis, without more, to conclude that the applicant does not possess the requisite character and fitness to practice law. Without knowing the circumstances that caused applicant to incur past-due debts and unpaid judgments and to resort to bankruptcy to discharge them, neither the board nor this court can evaluate what weight to give those circumstances in this case.

We are satisfied, from our review of the record, that the board's investigatory request was a reasonable effort to determine why applicant has had the financial difficulty that he has had, which in turn bears on applicant's character and fitness to practice law. The board's recommendation is not based on the fact that

4

applicant filed for bankruptcy; it is based on applicant's noncompliance with the board's investigation of his character and fitness.[2] Applicant has had ample opportunity to comply with the board's requests and, indeed, does not appear to be barred from reapplying for admission and complying prospectively.[3] We conclude that, under the circumstances presented by this record, it is appropriate for us to deny applicant admission to the Oregon bar based on his failure to comply with the board's investigation.

Application denied.

---

[2] In its letter explaining its recommendation, the board emphasized that

"the Board is not recommending that [applicant] be denied admission because he filed bankruptcy or failed to pay a dischargeable debt. The Board would have made its inquiry regarding [applicant's] finances regardless of whether he invoked bankruptcy protection. In fact, the Board commenced its inquiry before it even learned that [applicant] had filed a bankruptcy petition."

[3] In his letter waiving the filing of a brief, applicant represents that he has obtained some of the information that the board asked him to provide, and that he is making other efforts to comply with the board's requests. Evidently, however, applicant has not yet done so fully. Although the question is not before us, we note that we are unaware of any reason why applicant, if he is prepared to now cooperate with the Board's investigation, cannot reapply for admission based on his current bar exam results, assuming that he pays any fees that might apply to such a reapplication. *See generally* RFA 4.10 (setting fees and other terms for applications and reapplications for admission to the bar).